## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CHARLES RICHARDSON**                                      **CIVIL ACTION**

**VERSUS**                                                          **NO. 16-14261**

**JASON KENT, WARDEN**                                      **SECTION "I"(2)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.    <u>FACTUAL AND PROCEDURAL BACKGROUND</u>[2]

The petitioner, Charles Richardson, is incarcerated in the Dixon Correctional Institute in Jackson, Louisiana.[3]  On March 25, 2009, Richardson was indicted by a St. Bernard Parish grand jury for the first degree murder of India Mahoney.[4]  The Louisiana Fourth Circuit Court of Appeal summarized the facts determined at trial as follows:

> Elizabeth Richardson was the wife of [Charles] Richardson, but the two were separated at the time of the incident.  Mrs. Richardson had a daughter, India Brianne Mahoney, whom she adopted in 1990.  On the morning of January 13, 2009, Mrs. Richardson was sleeping when she heard India and Richardson arguing.  She looked at her clock-it was shortly after 5:00 a.m.  Mrs. Richardson got her robe and walked into the hallway.  Richardson was pushing to pass India and her, heading towards the bedroom.  Mrs. Richardson tried to calm India, and she told her to go and let her worry about Richardson.  As she spoke to India, she heard Richardson behind her, saying, "I'm tired of this.  I'm not taking this no more.  I ain't got to put up with this.  I'm tired of this."
>
> Mrs. Richardson walked India down the hall, assuring her that she would take care of Richardson.  As she was trying to soothe her daughter, Mrs. Richardson felt something brush against her face.  She looked at her hand and saw blood, but did not know from whence it came at first.  She turned to face Richardson.  He was standing by her bedroom door with a gun in his hand.  She stood there in disbelief.  She wondered if she had been shot because she felt no pain.  She heard three shots before passing out.
>
> Mrs. Richardson explained that she is a security guard at a health clinic, and the gun was hers.  Richardson had bought her a trigger lock.  Mrs. Richardson kept the key to the lock in a jewelry box on her dresser.  Whenever she was home, Mrs. Richardson would lock the valve and place the gun in a drawer.  In order to use the gun, Richardson had to retrieve the key from her jewelry box, retrieve the

---

[2]The record provided by the State contains incomplete copies of numerous documents, no minutes from the post-trial and post-conviction proceedings and no trial transcripts.  Nevertheless, the pleadings and exhibits before me are sufficient to resolve Richardson's petition.

[3]Rec. Doc. No. 4.

[4]St. Rec. Vol. 1 of 4, Indictment (obscured copy), 3/25/09; Rec. Doc. No. 4-5, p. 71.  The State did not pursue the death penalty.

gun, and unlock the valve.  He knew where she kept the key.  The gun was never found.

After seeing the blood, Mrs. Richardson lost consciousness for a time.  At some point, she felt Richardson move her.  She pretended she was still unconscious because he seemed mad.  When Richardson left, he locked the door, got in his truck and drove off.  Richardson drove a gray Dodge truck.  A neighbor, Elvira Hill, testified that she saw him get into his truck and drive off at approximately 5:30 a.m. on January 13, 2009.  She had opened her door after hearing something hit her car.

When she got up, Mrs. Richardson could see India's foot in the hallway, and she knew she had to call for help.  She believed that Richardson had shot India.  Mrs. Richardson called 911 twice.  The first time, the operator hung up due to the inability to understand Mrs. Richardson.  Mrs. Richardson had been shot in the face multiple times.  In the second 911 call, she had difficulty speaking.  After calling 911, Mrs. Richardson unlocked the front door before crawling back to where India lay.  She tried to "wake" India, but "she never moved."

The police arrived subsequently.  Mrs. Richardson had to communicate with the emergency medical personnel by writing because she could not speak.  She wrote that Charles Richardson, her husband, had done the shooting.

India was a senior at Warren Easton High School and a straight A student.  She planned to study Engineering at Southern University.  After the shooting, Mrs. Richardson received notification that India had won the Black Engineers of America Scholarship and would have received $250,000 for her education.  Due to her coursework, India would have entered college as a sophomore.  At trial, Mrs. Richardson identified a picture of the graduation cap that two of India's classmates placed in the seat that would have been India's at graduation.  These classmates walked across the stage in India's stead.  They presented Mrs. Richardson with India's cap and diploma.  India was buried in her graduation gown.  Richardson never showed any remorse to Mrs. Richardson.

Mrs. Richardson had been treated with six surgeries, and a seventh was scheduled for her facial injuries at the time of trial.  Her jaw bone was replaced with titanium.  Her vocal chords were injured; she now takes medicine for sinus problems; her face is always cold; and she goes to therapy for her lower jaw muscles.

State Record Volume 1 of 4, Louisiana Fourth Circuit Opinion, 2011-KA-0838, pages 2-6, March 21, 2012; see also, State v. Richardson, 82 So.3d 572 (La. App. 5th Cir. 2012) (Table); State v. Richardson, No. 2011-KA-0838, 2012 WL 4758168, at *1-*4 (La. App.

4th Cir. Mar. 21, 2012) (this publication is missing certain text in the relevant section of the opinion).

Richardson was tried before a jury on January 12 and 13, 2011, and was found guilty as charged of first degree murder without capital punishment.[5]  At a hearing on January 20, 2011, the state trial court denied Richardson's motions for new trial and in arrest of judgment.[6]  The court thereafter sentenced him to the mandatory sentence of life in prison without benefit of parole, probation, or suspension of sentence.[7]  The court also denied his motion to clarify the sentence.[8]

On direct appeal, Richardson's appointed counsel argued that the prosecutor made a prejudicial comment suggesting that defense counsel was hiding damning evidence from the jury.[9]  Although granted leave, Richardson did not file a pro se supplemental brief.[10] On March 21, 2012, the Louisiana Fourth Circuit affirmed Richardson's conviction and

---

[5]St. Rec. Vol. 1 of 4, Trial Minutes (5 pages), 1/12/11; Trial Minutes (5 pages), 1/13/11; Jury Verdict, 1/13/11.

[6]St. Rec. Vol. 1 of 4, Sentencing Transcript, 1/20/11; Motion for New Trial, 1/18/11; Motion in Arrest of Judgment, 1/18/11.

[7]St. Rec. Vol. 1 of 4, Sentencing Transcript, 1/20/11.

[8]St. Rec. Vol. 1 of 4, Motion to Clarify Sentence, 6/3/11; Trial Court Order, 6/6/11.

[9]St. Rec. Suppl. Vol. 1 of 1, Appeal Brief, 2011-KA-0838, 7/29/11.

[10]Richardson, 2012 WL 4758168, at *1 n.1; St. Rec. Vol. 1 of 4, 4th Cir. Opinion, 2011-KA-0838, p. 1 n.1, 3/21/12; St. Rec. Supp. Vol. 1 of 1, Motion for Leave to File, 8/23/11.

sentence, finding no merit in the claim.[11]    The Louisiana Supreme Court denied Richardson's related writ application without stated reasons on November 9, 2012.[12]

Richardson's conviction became final ninety (90) days later, on February 7, 2013, when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filling for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

On November 1, 2013, Richardson signed and submitted to the state trial court an application for post-conviction relief in which he asserted that he received ineffective assistance of counsel on the following grounds:[13] (1) Counsel failed to challenge for cause a biased juror. (2) Counsel failed to file a motion for change of venue. (3) Counsel failed to file a motion to recuse the district attorney. (4) The cumulative errors of counsel affected the outcome of the trial.

---

[11]Richardson, 82 So.3d at 572; Richardson, 2012 WL 4758168, at *1; St. Rec. Vol. 1 of 4, 4th Cir. Opinion, 2011-KA-0838, 3/21/12.

[12]State v. Richardson, 100 So.3d 826 (La. 2012); St. Rec. Vol. 3 of 4, La. S. Ct. Order, 2012-KO-0761, 11/9/12; La. S. Ct. Writ Application, 12-KO-0761, 4/3/12 (postmarked 4/2/12, dated 4/4/12); St. Rec. Vol. 1 of 4, La. S. Ct. Letter, 2012-KO-761, 4/3/12.

[13]St. Rec. Vol. 2 of 4, Uniform Application for Post-Conviction Relief, 11/8/13 (dated 11/1/13); Supplemental Memorandum (incomplete copy), 1/12/14; Motion to Supplement, 12/20/13; Trial Court Order, 12/20/13.

After receiving responses from the State,[14] the state trial court denied the application at a hearing on January 26, 2015, at which Richardson was represented by appointed counsel.[15] The Louisiana Fourth Circuit declined to exercise supervisory jurisdiction and denied Richardson's related writ application on May 19, 2015.[16] On May 20, 2016, the Louisiana Supreme Court denied Richardson's subsequent writ application holding that he failed to show ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984).[17] The court also declined to consider Richardson's request for reconsideration as procedurally improper, citing La. S. Ct. Rule IX § 6.[18]

## II.  FEDERAL HABEAS PETITION

On July 19, 2016, Richardson submitted a deficient petition for federal habeas corpus relief pursuant to 28 U.S.C. § 2254 to the United States District Court for the

---

[14]St. Rec. Vol. 2 of 4, State's Answer, 12/2/13; State's Answer (incomplete copy), 12/4/13.

[15]St. Rec. Vol. 4 of 4, Hearing Transcript, 1/26/15. The transcript indicates that there was a prior post-conviction hearing held but the record contains no minutes and no other transcript.

[16]St. Rec. Vol. 4 of 4, 4th Cir. Order, 2015-K-0411, 5/19/15; 4th Cir. Writ Application (unfiled copy), dated 4/6/15; St. Rec. Vol. 2 of 4, Notice of Intent, 2/3/15; Trial Court Order, 2/9/15; Motion for Extension of Time, 3/16/15; Trial Court Order, 3/19/15.

[17]State ex rel. Richardson v. State, 191 So.3d 1008 (La. 2016); St. Rec., Vol. 3 of 4, La. S. Ct. Order, 2015-KH-1139, 5/20/16; La. S. Ct. Writ Application, 15-KH-1139, 6/11/15 (dated 6/6/15); St. Rec. Vol. 2 of 4, La. S. Ct. Letter, 2015-KH-1139, 6/11/15.

[18]State ex rel. Richardson v. State, 207 So.3d 413 (La. 2016); St. Rec. Vol. 3 of 4, La. S. Ct. Order, 2015-KH-1139, 10/10/16; La. S. Ct. Motion for Reconsideration, 15-KH-1139, 6/24/16 (dated 6/14/16).

Middle District of Louisiana.[19]  In response to a deficiency notice issued by the clerk of that court, Richardson filed an amended petition and a specific request that the court strike his original petition.[20]  The case proceeded under the amended complaint[21] and was thereafter transferred to this court where venue is proper.[22]

In his amended petition, Richardson asserted two grounds for relief:[23] (1) The prosecutor made an improper and prejudicial comment. (2) He received ineffective assistance of trial counsel because counsel (a) failed to challenge for cause a juror who was a law enforcement officer, (b) failed to file a motion for change of venue, (c) failed to file a motion to recuse the district attorney and (d) the cumulative effect of the errors prejudiced him.

---

[19]Rec. Doc. No. 1.

[20]Rec. Doc. Nos. 4 and 4-1 at p. 2.

[21]Pursuant to Fed. R. Civ. P. 15(a), an amended complaint supersedes the original complaint, and the original complaint has no legal effect except to the extent that it is incorporated by reference into the amended complaint. See Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (noting that Fifth Circuit precedent consistently holds that an amended complaint supersedes the original complaint); King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading."). Richardson's amended complaint, filed in the Middle District before transfer of the case, makes no reservation of the allegations or arguments in the original complaint and instead specifically requests that the original petition be stricken from the record.

[22]Rec. Doc. Nos. 6, 7.

[23]Rec. Doc. No. 4.

The State filed a response in opposition to Richardson's petition, conceding that Richardson has exhausted review of his claims and that his federal petition was timely.[24] Mistakenly assuming that Richardson asserted only one claim, ineffective assistance of counsel, the State asserts that he failed to establish any error in the state courts' denial of relief on that issue.

III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[25] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).   The AEDPA therefore applies to Richardson's petition, which, for reasons discussed below, is deemed filed in a federal court on July 17, 2016.[26] The threshold questions in habeas review under the amended

---

[24]Rec. Doc. No. 17.

[25]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[26]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of the Middle District initially received and filed Richardson's deficient petition on July 19, 2016, when it was received. His amended petition was later docketed on August 11, 2016, and the case was opened in this court on September 1, 2016, when I

statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes that Richardson's petition was timely filed and that his claims are exhausted. It does not specifically address any procedural bar to this court's review. Accordingly, this report addresses the merits of Richardson's claims.

IV.    STANDARDS OF A MERITS REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings. Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and

---

granted pauper status. Richardson dated the signature on the cover letter accompanying his original, deficient petition on July 17, 2016, which is the earliest date appearing in the record on which he could have submitted his pleadings to prison officials for mailing to a federal court.

the "clear and convincing evidence" burden placed on a petitioner who attempts to

overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and

fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state

court's decision "'was contrary to, or involved an unreasonable application of, clearly

established [Supreme Court precedent.]'"  Penry v. Johnson, 215 F.3d 504, 507 (5th Cir.

2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S.

849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210

F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1)

standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if
> the state court arrives at a conclusion opposite to that reached by this Court
> on a question of law or if the state court decides a case differently than this
> Court has on a set of materially indistinguishable facts.  Under the
> "unreasonable application" clause, a federal habeas court may grant the writ
> if the state court identifies the correct governing legal principle from this
> Court's decisions but unreasonably applies that principle to the facts of the
> prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); Penry v. Johnson, 532 U.S.

782, 792-93 (2001);  Hill, 210 F.3d at 485.  The "critical point" in determining the

Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s

unreasonable-application clause if, and only if, it is so obvious that a clearly established

rule applies to a given set of facts that there could be no 'fairminded disagreement' on the

question." (citation omitted)  White v. Woodall, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing Harrington v. Richter, 562 U.S. 86, 103 (2011)), and Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" White, 134 S. Ct. at 1706 (quoting Yarborough v. Alvarado, 541 U.S. 652, 666 (2004)).

"'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

## V.    PROSECUTOR'S COMMENT (CLAIM NO. 1)

Richardson asserts that the prosecutor made an improper and prejudicial comment about the fact that defense counsel chose not to introduce the police report into evidence.

He argues that the comment led the jury to believe that the defense was hiding damning evidence contained in the police report.

This claim was raised by Richardson's counsel on direct appeal. In the last reasoned opinion on the issue, the Louisiana Fourth Circuit held that, because the trial court admonished the prosecutor on its own and defense counsel did not request a jury instruction or move for a mistrial, the defendant could not assert a prejudice claim on appeal. The court also found no trial court error for appellate review, since the court admonished the prosecutor.[27] In the alternative, the court held that the comment was harmless under state law, and Richardson could show no prejudice due to the overwhelming evidence of his guilt.

A prosecutor's comment does not present a claim of constitutional magnitude in a federal habeas action unless it is so prejudicial that the trial was rendered fundamentally unfair in violation of the Due Process Clause. Jones v. Butler, 864 F.2d 348, 356 (5th Cir. 1988). "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned. The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (citations and quotations omitted); accord Rogers v. Lynaugh, 848 F.2d 606, 608 (5th Cir. 1988); Bell v. Lynaugh,

---

[27]Richardson, 2012 WL 4758168, at *4; St. Rec. Vol. 1 of 4, 4th Cir. Opinion, 2011-KA-0838, p. 7, 3/21/12.

828 F.2d 1085, 1095 (5th Cir. 1987).  The prosecutor's remarks must be evaluated in the context of the entire trial.  Greer v. Miller, 483 U.S. 756, 765-66 (1987) (citing Darden, 477 U.S. at 179); Kirkpatrick v. Blackburn, 777 F.2d 272, 281 (5th Cir. 1985).

Fifth Circuit precedent requires a two-step analysis when reviewing claims of prosecutorial misconduct.  United States v. Wise, 221 F.3d 140, 152 (5th Cir. 2000); United States v. Lankford, 196 F.3d 563, 574 (5th Cir. 1999).  First, the court must determine whether the prosecutor made an improper remark.  Wise, 221 F.3d at 152.  "If an improper remark was made, the second step is to evaluate whether the remark affected the substantial rights of the defendant."  Id.  A habeas corpus petitioner "must demonstrate that the misconduct [was] persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks."  Jones, 864 F.2d at 356; accord Hogue v. Scott, 874 F. Supp. 1486, 1533 (N.D. Tex. 1994).  Under this test, a petitioner must demonstrate that the comment rendered his trial "fundamentally unfair" by showing "a reasonable probability that the verdict might have been different had the trial been properly conducted."  Rogers, 848 F.2d at 609 (footnote and citations omitted).

For purposes of federal habeas review under the AEDPA, a claim of prosecutorial misconduct presents a mixed question of law and fact.  Brazley v. Cain, 35 F. App'x 390, 2002 WL 760471, at *4 n.4 (5th Cir. Apr. 16, 2002) (citing United States v. Emueqbunam, 268 F.3d 377, 403-04 (6th Cir. 2001); Jones v. Gibson, 206 F.3d 946, 958

13

(10th Cir. 2000); United States v. Noriega, 117 F.3d 1206, 1218 (11th Cir. 1997); United States v. Spillone, 879 F.2d 514, 520 (9th Cir. 1989)). The court must determine whether the denial of relief was contrary to or an unreasonable application of Supreme Court law.

As summarized by the Louisiana Fourth Circuit on appeal, Richardson's counsel questioned the chief investigating officer, Major Robert McNabb, about whether India or Mrs. Richardson had been shot first. Defense counsel referred the Major to his report during the course of her questioning. The State attempted to use the report during re-direct questioning to emphasize other matters it contained. Defense counsel objected, and the state trial court sustained the objection. The court noted that, while defense counsel had asked questions about the document, she had not introduced it into evidence. At that point, the prosecutor commented, "Yes sir, I can see why she didn't."[28] The court admonished the prosecutor not to comment. Although defense counsel tried to enter an objection to the comment afterwards, the court declined to consider it.

Richardson has not established that the single comment by the prosecutor so infected the trial as a whole that the trial was rendered fundamentally unfair. Richardson has not alleged or shown that the prosecutor's one-time, eight-word comment was either persistent or so pronounced as to raise federal due process concerns. In light of the entirety of the evidence, Richardson cannot establish that the jury perceived an

---

[28]Richardson, 2012 WL 4758168, at *4; St. Rec. Vol. 1 of 4, 4th Cir. Opinion, 2011-KA-0838, p. 6-7, 3/21/12.

implication of guilt from the comment that would have impacted the verdict. When viewed as a whole, the evidence introduced at trial was more than ample proof, beyond any interpretation of the prosecutor's perfunctory comment, upon which the jury justifiably concluded that Richardson was guilty of first degree murder by intentionally killing or inflicting great bodily harm upon India Mahoney. In the overall context of the trial, it cannot be concluded that Richardson would not have been convicted but for the prosecutor's single comment.

Under the circumstances of this case, Richardson has failed to establish that the single comment by the prosecutor denied him due process or improperly impacted the verdict. The denial of relief by the state courts was not contrary to or an unreasonable application of federal constitutional precedent. He is not entitled to habeas corpus relief on this claim.

VI.    EFFECTIVE ASSISTANCE OF COUNSEL (CLAIM NO. 2)

Richardson asserts that his right to effective assistance of counsel was denied when his trial counsel (a) failed to challenge for cause a juror who was a law enforcement officer, (b) failed to file a motion for change of venue and (c) failed to file a motion to recuse the district attorney. He also argues that the cumulative effect of the errors by counsel was prejudicial and violated his constitutional rights. The record reflects that Richardson was represented by five indigent defenders on the first day of trial and four

of those same attorneys made appearances on the second day of trial.[29]  He does not specifically identify in his argument which of his various defense counsel made the alleged errors.

Richardson asserted these claims on post-conviction review in the state courts.  In the last reasoned decision on the issue, the Louisiana Supreme Court concluded without discussion that Richardson failed to establish that he received ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984).

The standard for judging performance of counsel was established by the United States Supreme Court in Strickland, 466 U.S. at 668, in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. Strickland, 466 U.S. at 697.  The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  Kimler, 167 F.3d at 893.

---

[29]St. Rec. Vol. 1 of 4, Trial Minutes (5 pages), 1/12/11; Trial Minutes (5 pages), 1/13/11.

A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under <u>Strickland</u>, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) <u>Motley v. Collins</u>, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting <u>Strickland</u>, 466 U.S. at 693); <u>Harrington</u>, 562 U.S. at 112 (<u>Strickland</u> requires a "substantial" likelihood of a different result, not just "conceivable" one.)

On habeas review, the United States Supreme Court has clarified that, under <u>Strickland</u>, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." <u>Harrington</u>, 562 U.S. at 105.  The <u>Harrington</u> Court went on to recognize the high level of deference owed to a state court's findings under <u>Strickland</u> in light of the AEDPA:

> The standards created by <u>Strickland</u> and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so.  The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.

<u>Harrington</u>, 562 U.S. at 105.

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." <u>Cullen v. Pinholster</u>, 563 U.S. 170, 190 (2011) (quoting <u>Knowles</u>, 556 U.S. at 123).  This

17

court must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690.

Federal habeas courts presume that litigation strategy is objectively reasonable unless clearly proven otherwise by the petitioner. Id., 466 U.S. at 689; Geiger v. Cain, 540 F.3d 303, 309 (5th Cir. 2008); Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. Strickland, 466 U.S. at 689; Neal, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001). Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)).

The issue of ineffective assistance of counsel is a mixed question of law and fact. Clark v. Thaler, 673 F.3d 410, 416 (5th Cir. 2012); Woodfox, 609 F.3d at 789. Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

A.    CHALLENGE JUROR FOR CAUSE

Richardson argues that his counsel were ineffective when they failed to lodge a challenge for cause against a prospective juror, George Faulkner, whom Richardson now claims was an "active duty" police officer.  In the state courts, Richardson asserted that counsel should have challenged Faulkner, a former sheriff's deputy, because he was acquainted with Richardson from a prior stay in the parish prison.  On post-conviction review of this claim, the state trial court concluded after an evidentiary hearing that Faulkner was a former sheriff's office employee who worked in the parish jail in the 1980's and who was not acquainted with the petitioner, Charles Richardson.  Instead, Faulkner had known of Richardson's father, Eugene Richardson, who had worked with Faulkner in the parish jail in the 1980's and whose name had been mentioned during an earlier part of the voir dire discussions.

Based on these findings, the state trial court concluded that Faulkner did not know Charles Richardson and had no prior knowledge of Richardson that might have warranted his removal from the jury panel.  Richardson has presented nothing to contradict these factual findings, and they are entitled to deference by this court.  The higher state courts found no error in this ruling or basis for relief under Strickland.

In this federal petition, Richardson for the first time asserts that Faulkner was an "active duty" member of the sheriff's office.  This contention is not factually supported

in the record.[30]  The record is clear (as conceded in Richardson's state court pleadings) that Faulkner was formerly with the sheriff's office in the 1980's.  There is no representation by Faulkner or anyone else anywhere in the record that Faulkner was an active duty officer at the time of Richardson's trial in 2011.  Richardson incorrectly draws an erroneous inference from a question posed to counsel by the state trial judge to conclude that Faulkner was still a police officer at the time of trial.  This is not an accurate conclusion in the context of those discussions.[31]

Nevertheless, the question of juror bias is a question of fact for the trial court, which is owed deference by this court under the AEDPA.  See Virgil v. Dretke, 446 F.3d 598, 610 n.52 (5th Cir. 2006).  Considering the record and the findings made by the state courts, Richardson has failed to establish any actual or presumed bias based on Faulkner's alleged prior knowledge of him or prior position in the sheriff's office.  See Montoya v. Scott, 65 F.3d 405, 419-420 (5th Cir. 1995) (allegation that juror was acquainted with victim does not alone establish bias sufficient to disqualify juror); Riggins v. Butler, 705 F. Supp. 1205, 1209-10 (E.D. La. 1989) (declining to presume bias simply because seated

---

[30]The State did not raise a failure to exhaust defense.  To the extent this presents an unexhausted argument, because it has no merit, I will address the merits notwithstanding.  28 U.S.C. § 2254(b)(2).

[31]The State failed to produce the trial transcript. Certain relevant portions, however, were attached to Richardson's state application for post-conviction relief. See St. Rec. Vol. 2 of 4, Uniform Application for Post-Conviction Relief, 11/8/13 (attached Transcript, pp. 100-104).

juror was a former police officer).  Without some valid basis for an objection, counsel did not act deficiently or prejudicially in allowing Faulkner to remain on the jury.

Furthermore, an attorney's decision whether to request removal of a juror is generally a matter of trial strategy.  See Ray v. Johnson, 196 F.3d 1257, at *1 (5th Cir. 1999); Romero v. Lynaugh, 884 F.2d 871, 878 (5th Cir. 1989); Wash v. Hood, No. 07CV46, 2007 WL 3047149 (N.D. Miss. Oct. 17, 2007) (citing Teague v. Scott, 60 F.3d 1167, 1172 (5th Cir. 1995)).  Counsel's decision in this regard is entitled to a strong presumption of reasonableness.  Moore, 194 F.3d at 591 (recognizing a strong presumption that strategic or tactical decisions made after adequate investigation fall within the wide range of objectively reasonable professional assistance).

Richardson has shown no basis for any court to find that Faulkner was biased against him or otherwise unqualified to sit on the jury.  The fact that a prospective juror is or was a law enforcement official is not grounds in itself for disqualification from a jury.  See  United States v. McCord, 695 F.2d 823, 828 (5th Cir. 1983); United States v. McIntire, 997 F.2d 687, 697-98 (10th Cir. 1993) (citing Mikus v. United States, 433 F.2d 719, 724 (2d Cir. 1970)).  He therefore has failed to establish that his counsel acted unreasonably or had any basis to seek the removal of Faulkner from the jury or that any similar challenge for cause would have been granted by the state trial court.  In addition, because Faulkner was not "active duty," Richardson has set forth no basis for counsel to have questioned Faulkner's participation on that ground.  Significantly, the cause

21

challenge entered by the State was denied by the state trial court, which found that Faulkner was not biased.[32]  As the state trial court concluded, any effort to reassert the challenge for cause would have been unsuccessful.  Counsel is not ineffective for failing to assert a meritless objection.  Johnson v. Cockrell, 306 F.3d 249, 255 (5th Cir. 2002) (counsel is not required to make futile motions or frivolous objections); Smith v. Puckett, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); Koch v. Puckett, 907 F.2d 524, 527 (5th Cir. 1990) ("counsel is not required to make futile motions or objections.").

For these reasons, the denial of relief on this issue was not contrary to or an unreasonable application of Strickland.  Richardson is not entitled to relief on this issue.

B.    FILE A MOTION FOR CHANGE OF VENUE

Richardson claims that his trial counsel were ineffective for failure to seek a change of venue, which deprived him of a fair trial.  Richardson contends that his crime was highly publicized in St. Bernard Parish and warranted a transfer of venue to assure that he was tried by an unbiased jury.  For this reason, he claims that he was prejudiced by his counsel's failure to request the change of venue.  Richardson asserted this argument on state post-conviction review, and relief was denied.

To establish prejudice under Strickland, Richardson must "bring forth evidence demonstrating that there is a reasonable probability that the trial court would have, or at

---

[32]St. Rec. Vol. 4 of 4, Hearing Transcript, pp. 30-31, 1/26/15.

least should have, granted a motion for change of venue if [defense] counsel had presented such a motion to the court." Meeks v. Moore, 216 F.3d 951, 961 (11th Cir. 2000). Under Louisiana law, a trial court must change the venue of a prosecution "when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence . . . a fair and impartial trial cannot be obtained in the parish where the prosecution is pending." State v. Bordelon, 33 So.3d 842, 866 (La. 2009) (citing La. Code Crim. P. art. 622). The court must consider whether "the prejudice, the influence, or the other reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial." Id. However, "the defendant must prove more than mere public knowledge or familiarity with the facts of the case to be entitled to have his trial moved to another parish; rather, the defendant must show the extent of prejudice in the minds of the community as a result of such knowledge or exposure to the case before trial." Bordelon, 33 So.3d at 866; State v. Frank, 803 So.2d 1, 14-15 (La. 2001).

On post-conviction review, the state trial court found that there was no abundance of publicity and no indication from the voir dire proceedings that the potential jurors were impacted by publicity. The court found that only two of the 28 jurors questioned on voir dire had any recollection of reading about the case, one of whom could not remember what he had read. The one with a better recollection was removed by peremptory challenge. The state trial court also noted in resolving the issue that it would

not have granted a motion for change of venue.  Based on these conclusions by the state courts, Richardson cannot establish prejudice because there was no likelihood that the court would have granted the motion under state law.  Counsel did not cause prejudice to the defense when they failed to move for a change of venue without a basis to do so. Defense counsel were not deficient for failing to file a baseless and unnecessary motion. Johnson, 306 F.3d at 255; Smith, 907 F.2d at 585 n.6; Koch, 907 F.2d at 527.

Under federal law, Richardson has not established a basis for his counsel to have moved for a change of venue.  The Fourteenth Amendment protects a defendant's Sixth Amendment right to have his case decided by an impartial jury, Irvin v. Dowd, 366 U.S. 717, 722 (1961), and a defendant may request a "transfer of the proceeding to a different district . . . if extraordinary local prejudice will prevent a fair trial - 'a basic requirement of due process.'"  Skilling v. United States, 561 U.S. 358, 378 (2010) (quoting In re Murchison, 349 U.S. 133, 136 (1955)).  The Supreme Court has stated that an impartial jury, however, is not one in which the jurors must be totally ignorant of the facts and issues involved in the case.  Irvin, 366 U.S. at 722.  "To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard.  It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."  Id. at 723. Under Strickland, it is defendant's burden to "overcome the presumption that, under the

circumstances, the challenged action 'might be considered sound trial strategy.'" 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

In this case, counsel's decision not to move for a change of venue was tactical and reasonable under the circumstances. The record does not indicate the kind of widespread and influential publicity that would have warranted moving the trial. There is nothing to demonstrate that any media coverage or pretrial publicity was so pervasive and inherently prejudicial that an unbiased jury pool could not have been assembled in his community. Richardson offers no evidence to show that the publicity and notoriety of the case actually prejudiced his jury selection process, especially since 26 of the 28 jurors had never heard of the case. As found by the state courts, none of the jurors who served at the trial had outside knowledge of the case, including the one juror who had no recollection of what he may have read about it.

Richardson cannot establish prejudice due to counsel's failure to request a change of venue. In the absence of showing prejudice under Strickland, he cannot show that the state courts' decision was contrary to or an unreasonable application of Supreme Court law. He is not entitled to relief on this claim.

## C.    FILE A MOTION TO RECUSE THE DISTRICT ATTORNEY

Richardson argues that his counsel was ineffective when they failed to move to recuse the district attorney. Construed broadly, this claim appears to be that his original appointed counsel, Gregory Duhy, left the indigent defender's office to join the St.

Bernard District Attorney's Office while Richardson's criminal case was still pending. He asserts that this was sufficient grounds for his counsel to move to recuse the district attorney's office under La. Code Crim. P. art. 680(3). He claims that Duhy was privy to confidential information and his move to the prosecutor's office created a conflict of interest.

Under relevant Louisiana law, a district attorney shall recuse himself when he has been employed or consulted in the case as attorney for the defendant before entering the district attorney's office. La. Code Crim. P. art. 680(3). Following the hearing on post-conviction review, the state trial court found that, upon his joining the district attorney's office, Duhy informed the district attorney that he would make no comments about or have any involvement in the prosecution against Richardson.[33] The court found no evidence of any wrongdoing by Duhy or any basis upon which to recuse the district attorney's office.

Based on these factual findings by the state trial court, who also was the sitting trial judge, Richardson has failed to demonstrate any basis for his counsel to have filed a motion to recuse Duhy, who had already separated himself from Richardson's prosecution. Louisiana law did not require that the entire district attorney's office be recused, only the specific assistant involved in the potential conflict. State v. Ellis, 161 So.3d 64, 80 (La. App. 4th Cir. 2015) (citing State v. Edwards, 420 So.2d 663, 673 (La.

---

[33]St. Rec. Vol. 4 of 4, Hearing Transcript, pp. 31-32, 1/26/15.

1982)).  In addition, under Louisiana law, "[a]n appearance of bias and prejudice is not sufficient to warrant the granting of a motion to recuse."  Instead, to demonstrate that a district attorney should be recused, "the defendant has to prove that he was treated differently in the management of his case." Ellis, 161 So.3d at 80 (quoting State v. Wainwright, 837 So.2d 123, 124 (La. App. 4th Cir. 2002)).  Richardson makes no such allegation.  As determined by the state courts on post-conviction review, Richardson did not establish and the record did not support a basis for a recusal motion.  His attorneys were not constitutionally deficient for failing to file a baseless and unnecessary motion. Johnson, 306 F.3d at 255; Smith, 907 F.2d at 585 n.6; Koch, 907 F.2d at 527.

Richardson has failed to establish that his counsel acted in a deficient manner or prejudiced his trial in failing to seek recusal of Duhy or the district attorney's office.  The denial of relief on this issue was not contrary to or an unreasonable application of Strickland.  He is not entitled to relief on this claim.

D.    NO CUMULATIVE ERROR

Richardson alleges that the cumulative effect of the errors of his trial counsel violated his constitutional rights.  He was denied relief on this claim on post-conviction review in the state courts because he failed to establish any ineffective assistance by his counsel.

Due process standards require this court to consider "whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the

procedures followed by the State were constitutionally sufficient." Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (citing Ky. Dept. of Corr. v. Thompson, 490 U.S. 454, 460 (1989)). Due process requires, therefore, that the court grant habeas relief only when the cumulative errors of the state court make the underlying proceeding fundamentally unfair. Neyland v. Blackburn, 785 F.2d 1283 (5th Cir. 1989).

The Supreme Court has recognized that the cumulative effect of established errors, though not individually worthy, could be collectively significant under the due process standard. Kyles v. Whitley, 514 U.S. 419, 436-37 (1995). Cumulative error "provides relief only when the constitutional errors committed in the state trial court so fatally infected the trial that they violated the trial's fundamental fairness." (internal quotations omitted) Carty v. Quarterman, 345 F. App'x 897, 909 (5th Cir. 2009) (quoting Spence v. Johnson, 80 F.3d 989, 1000 (5th Cir. 1996)). To provide relief on federal habeas review, cumulative errors must have "more likely than not caused a suspect verdict." Carty, 345 F. App'x at 909.

For the reasons discussed above, Richardson has identified no constitutional error by the state courts arising from his state criminal proceedings or the state court rulings on his various claims, including the effective assistance of his counsel. Specific to his counsel's assistance, he has shown no errors at all, much less errors that can be considered to have created a prejudicial effect. See Turner v. Quarterman, 481 F.3d 292, 301 (5th Cir. 2007) (citing Derden, 978 F.2d at 1454, 1461) (meritless claims or claims

that are not prejudicial cannot be cumulated regardless of the total number raised)). When individual contentions of ineffective assistance are meritless, that result cannot be changed simply by asserting the same claims collectively.  "[I]neffective assistance of counsel cannot be created from the accumulation of acceptable decisions and actions." United States v. Hall, 455 F.3d 508, 520 (5th Cir. 2006) (citing Miller, 200 F.3d at 286 n.6); Sholes v. Cain, 370 F. App'x 531, 535 (5th Cir. 2010); Mullen v. Blackburn, 808 F.2d 1143, 1147 (5th Cir. 1987) (with respect to cumulation of meritless claims, "Twenty times zero equals zero.").

Without some showing of a constitutional error, there can be no deleterious cumulative effect for this court to consider.  Turner, 481 F.3d at 301 ("... where individual allegations of error are not of constitutional stature or are not errors, there is 'nothing to cumulate.'"); Martinez-Perez v. Dretke, 172 F. App'x 76, 83 (5th Cir. 2006) ("Obviously, if there was no error . . . there was no cumulative error." (emphasis in original)); see also United States v. Fields, 761 F.3d 443, 483 (5th Cir. 2014) (where no error by lower court was established, there was no cumulative error).

The state courts' denial of relief on this claim and on all of Richardson's arguments of ineffective assistance of counsel was not contrary to or an unreasonable application of Supreme Court precedent, including Strickland.  Richardson is not entitled to relief on this claim or any of his assertions of ineffective assistance of counsel.

29

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Richardson's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[34]

New Orleans, Louisiana, this _____10th_____ day of July, 2017.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[34]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

30